## THE STATE OF MARYLAND *vs.* WILLIAM C. MERCER.

*Competency of Grand Jurors—Religious Belief—Plea in Abatement—Perjury—Sufficiency of Indictment.*

The question of the competency of the members of the grand jury to serve may be raised by a plea in abatement to the indictment found by the grand jury.

Declaration of Rights, Art. 36, provides that no one otherwise competent shall be deemed incompetent as a witness or juror on account of his religious belief, provided he believes in the existence of God and that under His dispensation such person will be held morally accountable for his acts and will be rewarded or punished therefor in this world or the world to come. Under this provision no one is competent as a juror who does not have that belief, but it is not necessary that he should believe in the truths of the Holy Scriptures.

A plea in abatement to an indictment alleged that the grand jury which returned it was not legally constituted, because a certain member of it was an atheist and infidel, who did not believe in the existence of God nor in the truths of the Holy Scriptures. *Held*, that a demurrer to this plea was properly sustained, because it presented a false issue in its averment as to the juror's disbelief in the Holy Scriptures.

Perjury is the willful and corrupt making, when under oath, of a false statement material to the issue or subject of inquiry, in a judicial proceeding, or in an affidavit required by law to be made.

The oath in such cases must have been taken in the presence of an officer or tribunal authorized to administer it, but the competency of the person who reads the words of the oath to the witness, and does the min-

isterial part of its administration, is not material. He may be the clerk, or his deputy, or other person.

An indictment sufficiently charges the crime of perjury when it avers that the defendant appeared personally before a certain Orphans' Court and requested the grant of letters of administration on the estate of a certain decedent; that the defendant took an oath required by law before said Court in due form of law, said oath being administered by a duly appointed deputy Register of Wills; that the defendant knowingly and falsely made oath that diligent search had been made among the papers of the decedent and that no paper purporting to be his last will could be found, and that to the best of the defendant's knowledge the decedent had died intestate, and that the defendant well knew at the time that the decedent died leaving a paper purporting to be his last will. Such indictment shows that the false statement was made in the course of a judicial proceeding; that it was material to the inquiry before the Court, and the allegation that the deputy register administered the oath may be disregarded as surplusage, or as subordinate to the allegation that the defendant took the oath in due form of law.

Appeal from the Circuit Court for Frederick County (HEN-DERSON and MOTTER, J. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William S. Bryan, Jr., Attorney-General,* for the appellant.

*Glenn H. Worthington* and *P. F. Pampel,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellee was indicted in the Circuit Court for Frederick County for perjury alleged to have been committed by making a false oath in certain proceedings of the Orphans' Court of that county. He filed a plea in abatement, to the indictment, alleging that the grand jury which had indicted him was not legally constituted because one of its members who is named in the plea was an atheist and infidel who did not believe in the existence of God nor in the truths of the Holy Scriptures.

The State demurred to the plea and the Court sustained the demurrer. The traverser then moved to quash the indictment and the Court overruled his motion. He then demurred

to the indictment and to each count of it and the Court sustained his demurrer and gave judgment in his favor and the State appealed.    Under Art. 5, sec. 80 of the Code, as construed in *Avirett's case*, 76 Md. 515, and *Floto's case*, 81 Md. 602, the whole record including both demurrers is brought up by the appeal.

We are of opinion that the traverser's plea in abatement was a bad one because it presented a false issue by averring that the grand juror in question did not believe in the truths of the Holy Scriptures. No such belief is required as a qualification for a juror and therefore to uphold such a plea might exclude a juror who was competent to serve as such.    The demurrer to this plea was therefore properly sustained.    Art. 36 of the Declaration of Rights provides that no one otherwise competent shall be deemed incompetent as a witness or juror on account of his religious belief "provided he belies in the existence of God and that under His dispensation such person will be held morally accountable for his acts and will be rewarded or punished therefor in this world or the world to come," but says nothing about a belief in the truths of the Holy Scriptures.

If the plea had simply set up that the grand juror in question was not a qualified juror because he did not believe in the existence of God and that under His dispensation he would be held morally accountable for his acts and be rewarded or punished therefor in this world or the world to come it would have been a good plea and the traverser would have been entitled to have the issue raised thereby tried.    Our attention has not been called to any previous construction by this Court of this section of the Declaration of Rights as applied to the competency of a juror.    The case of the insensibility of a *witness* to the obligation of an oath by reason of his want of belief in God and His dispensation of rewards and punishments was considered in *Arnd* v. *Amling*, 53 Md. 192, and was again referred to in JUDGE BRYAN's opinion in *DuPuy* v. *Terminal Co.*, 82 Md. 444, but that is not the precise question before us now.    We think however, that the language

used in sec. 36 is plain and that its intention clearly was to afford to the community, in so far as they were affected by the exercise of the important powers conferred upon grand juries, the protection as to each juror of the sense of restraint and obligation arising from the belief that he would be held accountable for all of his transactions at the bar of Divine Justice. The provision therefor contained in the section that no one should be deemed *incompetent* to serve as a juror by reason of his religious belief provided he had the belief therein mentioned in the existence of God and His dispensation of rewards and punishments, in order to be given its proper and legitimate operation, must be construed to assert that no one shall be deemed *competent* as a juror who does not have that belief.

If any of the grand jurors who found the present indictment against the appellee were incompetent it is clearly null and void. *Clare* v. *State*, 30 Md. 163; *State* v. *Vincent*, 91 Md. 709. It is equally clear that it would have been proper for the traverser to have raised the issue of the competency of the grand juror by an appropriate plea in abatement. *Clare* v. *State, supra; Avirett* v. *State*, 76 Md. 537.

The second demurrer filed by the traverser raised the question whether the indictment contained all of the requisite averments to constitute the crime of perjury. The essential features of perjury at common law are the willful making when under oath in a judicial proceeding or Court of justice of a false statement material to the issue or point of inquiry. The offense consists in the swearing falsely and corruptly and not through mistake. 2 *Bishop's New Criminal Procedure*, sec. 1015; 2 *Wharton's Am. Crim. Law*, sec. 1244; *Hochheimer's Crim. Law*, sec. 404. By sec. 356 of Art. 7 of the Code false swearing in an affidavit required by law to be taken is also made perjury.

The oath in such cases must have been taken in the presence of an officer or tribunal authorized to administer it, but the competency of the person who reads the words of the oath to the witness and does the ministerial part of its admin-

istration is not material.  He may be a clerk or his deputy or other person.  *Masterson* v. *State*, 144 Ind. 240; *Walker* v. *State*, 107 Ala. 5; *Oaks* v. *Rodgers*, 48 Cal. 197; *Stephens* v. *State*, 31 Tenn. 157; 21 *Am. & Eng. Ency.*, 2 ed., p. 749.

The first count of the indictment alleges the pendency before the Orphans' Court of Frederick County of a proceeding upon the petition and application of the traverser and others for letters of administration on the personal estate of William E. Mercer, deceased, and that the said Court had competent jurisdiction to hear and decide the matter of said proceeding and to administer the law therein, and that at the time of the filing of the petition the traverser took an oath and affidavit required by law "before the said Orphans' Court of Frederick County, State of Maryland, in due form of law," that the matters and things stated in the petition were true to the best of his knowledge, information and belief "said oath having been then and there administered by one Edward A. Toms, who was then and there a duly appointed, qualified, and acting deputy Register of Wills," having power by law to administer an oath.  It is further averred that being so sworn in the said proceeding the traverser in a matter material thereto and during the hearing thereof, knowingly and falsely declared and made oath that diligent search had been made among the books, papers, &c., of the decedent and that no paper purporting to be his last will could be found and that to the best of the traverser's knowledge, information and belief the decedent had died intestate and that the traverser well knew at the time of making said oath that the decedent did leave a paper purporting to be a last will and did not die intestate.

The second count differs from the first in alleging that the traverser and others appeared personally before the Orphans' Court and requested that letters of administration on the personal estate of the decedent be granted to them, and that he was required by law to prove for that purpose the intestacy of the decedent to the satisfaction of that Court and that in the matter and proceeding of the granting of the letters, of which the Court had jurisdiction, it became material to ascertain

whether the decedent died intestate or left any papers pur-
porting· to be his last will, and that the traverser, having been
duly sworn (in the manner stated in the first count) knowingly
and falsely made the statement, already mentioned, as to the
diligent but fruitless search for any paper purporting to be his
last will and testament and as to his death intestate.

Both of these two counts are sufficient to charge perjury
at common law.    In each one of them the oath of the trav-
erser is alleged to have been taken before the Orphans' Court
in due form of law in an application for letters of administra-
tion upon the personal estate of a deceased person who was
alleged to have died intestate.    Such an application is cer-
tainly a proceeding in the course of the administration of jus-
tice and it is one over which the Orphans' Court has full jur-
isdiction under Art. 93, sec. 234 of the Code.    A statement
made under oath in that proceeding touching the intestacy of
the decedent is in the highest sense material to the point of
inquiry as letters of administration can only be granted in
cases of intestacy. .

The allegation that the oath was taken "in due form of law"
"before" the Orphans' Court was sufficient although accom-
panied by the statement that it was administered by the deputy
Register of Wills.    2 *Wharton's Am. Crim. Law*, sec. 1257,
1287, 10 ed.    Not only had the Orphans' Court, when acting
as a judicial tribunal in such a proceeding as the one now un-
der discussion, power to administer an oath, but Art. 93, sec.
16 of the Code, makes it incumbent upon the person applying
for administration to prove the dying intestate to the satisfac-
tion of the Court, unless the same be notorious, and expressly
authorizes the Court to examine the applicant under oath as
to whether the party dying left any will.

The corrupt intent of the traverser in making the alleged
false statements when under oath is plainly and distinctly
charged in both counts of the indictment.    As it is distinctly
alleged that the traverser took the oath *in due form of law*
before the Orphans' Court in the proceeding on the applica-
tion for administration, the further allegation that the deputy

register who administered the oath had authority by law to do so may either be treated as subordinate to or in amplification of the statement as to its due administration or may be disregarded as surplusage.

For the error of the Court below in its rulings upon the traverser's demurrer to the indictment the judgment must be reversed and the case remanded, for a new trial.

*Judgment reversed with costs and case remanded.*

(Decided June 22nd, 1905.)